In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1891

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TARON CHERRY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 15-cr-30101-MJR — **Michael J. Reagan**, *Chief Judge.*

ARGUED OCTOBER 26, 2016 — DECIDED MAY 4, 2017

Before FLAUM, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Taron Cherry was indicted for various charges involving heroin distribution and gun possession. Without a plea agreement, he pled guilty to all four counts of the indictment and was sentenced to 106 months' imprisonment. Cherry now challenges the district court's application of U.S.S.G. § 2K2.1(a)(3), which enhanced his base

offense level for possession of a firearm capable of accepting a large capacity magazine. Cherry argues that he constructively possessed the firearm at issue as it was actually possessed by an alleged co-conspirator. However, Cherry pled guilty to possessing the firearm and never stated that his possession was merely constructive. This is fatal to his appeal, so we affirm the district court's sentence.

## I. BACKGROUND

On May 16, 2015 in East St. Louis, Illinois, an off-duty police officer observed a gray Dodge Charger driving slowly down a line of parked cars as a passenger engaged in what appeared to be hand-to-hand drug transactions. When marked police cars responded to the area, the Charger sped away. After crashing into another car, the four occupants got out of the Charger and attempted to run away. But the officers caught two occupants, Taron Cherry (the driver), and a passenger and alleged co-conspirator, Detrell Crews.

In the Charger, the officers found hundreds of individual capsules of heroin, numerous effects related to the sale of heroin, and a Glock Model 23, .40 caliber pistol. They also found a Smith & Wesson 9 mm pistol with sixteen rounds in the magazine and one round in the chamber, in a trash can where Crews had been observed throwing an object. The trash can was a few feet from where Crews was arrested.

### A. Indictment and Plea

A grand jury indicted Cherry on four counts and he pled guilty to all four counts without a plea agreement: Count 1 charged conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 21 U.S.C. § 846, Count 2

charged possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, Count 3 charged possession of a firearm in furtherance of a drug trafficking crime ("a Glock, Model 23, .40 pistol … *and* a Smith & Wesson, 9 mm pistol") (emphasis added), in violation of 18 U.S.C. § 924(c)(1)(A), and Count 4 charged being a felon in possession of a firearm (referencing only the Glock), in violation of 18 U.S.C. § 922(g)(1).

### B. Sentencing

The probation officer submitted a presentence investigation report prior to the sentencing hearing. Consistent with the sentencing guidelines, Counts 1, 2, and 4 were grouped. *See* U.S.S.G. §§ 3D1.3(a) and (b) (2014). The report stated that the base offense level was 22 for the grouped offenses under § 2K2.1(a)(3), which applies "if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine … and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of … a crime of violence." A semiautomatic firearm capable of accepting a large capacity magazine is one that "had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition." U.S.S.G. § 2K2.1 cmt. n.(2). It is uncontested that the Smith & Wesson meets this definition as it had attached to it a magazine loaded with sixteen rounds of ammunition. Also, there is no dispute that § 2K2.1(a)(3)(B) is satisfied as the offense was committed after Cherry was convicted of First Degree Assault, a crime of violence. The base offense level was then adjusted upward by two for obstruction of justice and downward by three for acceptance of responsibility resulting in a total offense level of

21. With a criminal history category of III, the guideline imprisonment range was 46 to 57 months.

Cherry filed an objection to the report, arguing his offense level for the grouped offenses should not have been calculated according to § 2K2.1(a)(3) as his possession of the Smith & Wesson was constructive because it was his alleged co-conspirator, Crews, who actually possessed the Smith & Wesson. Cherry argued that because his constructive possession was based on his participation in the conspiracy, a finding had to made that the firearm's ability to hold a large capacity magazine was reasonably foreseeable to Cherry and was in furtherance of the jointly undertaken criminal activity under § 1B1.3(a)(1)(B). The government responded that no such finding was required and that the enhancement was correctly applied since Cherry pled guilty to knowingly possessing the Smith & Wesson in Count 3, making it relevant conduct under § 1B1.3(a)(1)(A).

The district court agreed with the government and found a base offense level of 22 for the grouped offenses. After adjustments, it found a total offense level of 21 and sentenced Cherry to 46 months on the grouped offenses. Because Count 3 required a mandatory minimum sentence of 60 months to be served consecutively, Cherry was sentenced to a total of 106 months' imprisonment.

Cherry appeals his sentence, alleging that application of the sentencing enhancement under U.S.S.G. § 2K2.1(a)(3) to the grouped offenses was improper. Cherry argues that, because his possession of the Smith & Wesson was constructive, the district court was required, pursuant to U.S.S.G. § 1B1.3(a)(1)(B), to find he could reasonably foresee that the Smith & Wesson was capable of accepting a large capacity

magazine and that such capability was in furtherance of the jointly undertaken criminal activity before it could apply the base offense level enhancement, and that its failure to do so means he should receive a new sentencing hearing.

## II. ANALYSIS

Generally, we review a district court's legal application of the sentencing guidelines de novo and its factual findings supporting a sentencing enhancement for clear error. *United States v. Shamah*, 624 F.3d 449, 458 (7th Cir. 2010) (internal citations omitted). Here, however, the government argues that Cherry forfeited his argument requiring foreseeability of the firearm's capability to accept a large capacity magazine by not clearly raising the issue in district court. If forfeited, we review for plain error. *United States v. Martin*, 692 F.3d 760, 763 (7th Cir. 2012). Cherry contends that the argument was clearly presented to the district court, both indirectly through his written objection and more specifically at the sentencing hearing. We need not resolve the issue of forfeiture, however, as Cherry's appeal fails under either standard of review.

### A. Cherry Pled Guilty to Possessing the Smith & Wesson

When calculating the correct advisory guidelines range for an offense, the sentencing guidelines instruct district courts to consider "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1B1.1 cmt. n.(1)(H). Here, the grouped offenses of conviction were for drug possession, conspiracy, and possession of the Glock. Importantly, none of the grouped offenses included the Smith & Wesson. So inclusion of the Smith & Wesson when determining the guidelines

range for the grouped offenses is only permissible if its possession qualifies as relevant conduct under § 1B1.3.

Cherry argues that because Crews actually possessed the Smith & Wesson, the district court was required to apply § 1B1.3(a)(1)(B), which applies only to jointly undertaken criminal activity. Under § 1B1.3(a)(1)(B), relevant conduct includes "all reasonably foreseeable acts … of others in furtherance of the jointly undertaken criminal activity that occurred during the commission of the offense of conviction."(2014).[1] So Cherry argues that the district court was first required to find that Crews's possession of a firearm was reasonably foreseeable to Cherry. If it found it was reasonably foreseeable, Cherry argues that the district court would then have to find that the firearm's capability to hold a large capacity magazine was reasonably foreseeable to Cherry and in furtherance of the jointly undertaken criminal activity before applying the sentencing enhancement under § 2K2.1(a)(3) to the grouped offenses.

Cherry is correct that had the Smith & Wesson been possessed by Crews and not by Cherry, the district court would have been required to "make an individualized determination that the defendant should have foreseen" his co-conspirator's possession before finding Cherry's constructive possession was relevant conduct. *See United States v. Ramirez*,

---

[1] Cherry was sentenced under the 2014 version of the sentencing guidelines. In 2015 § 1B1.3(a)(1)(B) was updated, though no substantive changes were made. It now states that relevant conduct in the case of jointly undertaken criminal activity includes "all acts and omissions of others that were … in furtherance of that criminal activity, and … reasonably foreseeable … that occurred during the commission of the offense of conviction."

783 F.3d 687, 689 (7th Cir. 2015). However, Cherry knowingly and voluntarily pled guilty to possession of the Smith & Wesson in Count 3 without any agreement or reservation that his possession was merely constructive. Instead, Cherry admitted that *he actually* (not constructively) possessed the Smith & Wesson.

As Cherry's counsel acknowledged at oral argument, counsel "should've done a better job [and] blocked out the fact that the weapon was the co-defendant's," because lack of any such caveat forecloses Cherry's opportunity to now argue his possession was constructive. Since Cherry admitted his possession was actual, it is clearly relevant conduct under § 1B1.3(a)(1)(A) as it was an act committed by Cherry that occurred at the same time as the commission of the offense of conviction (i.e., the grouped offenses). *See* U.S.S.G. § 1B1.3(a)(1)(A). Because Cherry's possession of the Smith & Wesson is relevant conduct under § 1B1.3(a)(1)(A), we need not consider whether § 1B1.3(a)(1)(B) requires a district court to make findings that a firearm's capability to accept a large capacity magazine was reasonably foreseeable to a constructive possessor and in furtherance of jointly undertaken criminal activity before applying the § 2K2.1(a)(3) enhancement to the constructive possessor's base offense level.

Cherry wisely concedes that his constructive possession argument does not rely on the notion that it must be foreseeable to or known by a defendant personally liable for possession of a firearm capable of accepting a large capacity magazine that it had such capacity. Though we have not yet considered whether application of the enhancement requires that an actual possessor have knowledge or reason to believe that

the semiautomatic firearm is capable of accepting a large capacity magazine, s*ee United States v. Rice*, 673 F.3d 537 (7th Cir. 2012) (defendant did not appeal district court's conclusion that possession alone is sufficient for enhancement where defendant argued he was unaware of firearm's large capacity magazine), the plain language of the guideline – that "the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine" – suggests no such knowledge requirement. U.S.S.G. § 2K2.1(a)(3)(A)(i).

We also see no reason to distinguish the firearm's capability of accepting a large capacity magazine from the characteristics contained in the § 2K2.1(b)(4) enhancement (i.e., stolen or altered or obliterated serial number), which apply "regardless of whether the defendant knew or had reason to believe" the firearm had such characteristic. U.S.S.G. § 2K2.1 cmt. n.(8)(B). The difference between the enhancements is simply that § 2K2.1(a)(3) applies only where the defendant's possession occurred subsequent to sustaining a felony conviction for a crime of violence or a controlled substance offense. It would be peculiar to enhance a first-time offender's sentence for possession of a firearm with an altered serial number regardless of his knowledge of such characteristic, but then require that a defendant who has previously been convicted of a crime of violence have knowledge that the firearm possessed in the offense was capable of accepting a large capacity magazine to apply the enhancement under § 2K2.1(a)(3).

Because Cherry admitted that *he* knowingly possessed the Smith & Wesson, a semiautomatic firearm with a large capacity magazine, during the commission of the grouped offenses of conviction, and because no knowledge that the firearm had

the capability of accepting a large capacity magazine is required, Cherry's actual possession of the Smith & Wesson was relevant conduct and the district court correctly applied the § 2K2.1(a)(3) sentencing enhancement.

### III. CONCLUSION

We AFFIRM the judgment of the district court.