In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 21-1470

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONTRELL TURNIPSEED,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cr-611-6 — **Thomas M. Durkin**, *Judge.*

_____

ARGUED JANUARY 19, 2022 — DECIDED AUGUST 30, 2022

_____

Before WOOD, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* Rontrell Turnipseed pled guilty to conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) for actions he took while participating in the Four Corner Hustlers street gang. The district court sentenced Turnipseed to 120 months' imprisonment—above the advisory sentencing guideline range. Turnipseed challenges his sentence on three grounds. First, he

argues that the district court erred by applying the attempted murder guideline, as opposed to the aggravated assault guideline, in calculating the guidelines for his RICO offense. Second, he contends that he was a minor participant in the conspiracy and therefore entitled to a two-level reduction in his guidelines calculation. Third, he argues that his sentence is substantively unreasonable. We find no error and affirm.

**I**

In 2017, Turnipseed and ten codefendants from the Four Corner Hustlers were indicted on federal racketeering and obstruction charges. Two years later, Turnipseed pled guilty to his involvement in the racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). As part of his plea, Turnipseed signed a plea agreement detailing the acts he committed in furtherance of the conspiracy. Turnipseed admitted that the Four Corner Hustlers is a criminal enterprise engaged in racketeering activity including murder, robbery, extortion, and drug trafficking. Turnipseed also admitted that:

- On April 20, 2010, he was on a block of West Jackson Boulevard, armed with a loaded firearm, and selling heroin to customers on the street. When police arrived, he hid the firearm in a mailbox nearby. The officers recovered the firearm from the mailbox and 23 zip-lock baggies containing a total of 2.3 grams of heroin from his pocket.

- On August 31, 2012, he told a rival gang member that the rival could not sell drugs on a block of West Wilcox Street. During the exchange, he took out a handgun and fired at the rival gang

> member who returned fire. During the
> shootout, a high school student, T.S., sustained
> four gunshot wounds, including two "through-
> and-through" wounds in her right side and near
> her lower chest. T.S. was hospitalized for several
> hours and, following the incident, required
> counseling once a week for two years. She con-
> tinues to suffer back pain.

- On September 29, 2017, he persuaded three in-
  dividuals to destroy photographs and videos on
  his social media accounts to prevent their use in
  his criminal proceeding. The photographs and
  videos depicted him with firearms, narcotics,
  and other members of the Four Corner Hustlers.

At sentencing, Turnipseed agreed that his most serious
conduct under the conspiracy was that he shot at the rival
gang member. He insisted, however, that this constituted ag-
gravated assault and not attempted murder. Thus, he argued,
the district court should apply the aggravated assault guide-
line as his most serious racketeering activity.

Turnipseed also argued at sentencing that he was a minor
participant in the conspiracy. He therefore requested a two-
level minor-role reduction under U.S.S.G. § 3B1.2.

The district court rejected Turnipseed's arguments. It con-
cluded that Turnipseed's most serious racketeering offense
was attempted murder, which the district court noted, re-
quired a showing of malice aforethought. The district court
found that Turnipseed acted with malice aforethought during
the shootout with a rival gang member. The district court ex-
plained:

> The sequence of events, in my mind, by a pre-
> ponderance [of the evidence] is the defendant
> engaged in a clear thought process. It was not
> reckless conduct. He got into an argument, he
> pulled out a gun, and then shot at the person he
> was arguing with. He did it with malice afore-
> thought. I believe the evidence is clear on that
> from his own words, from the sequence of
> events. This was not a shot over his head. No
> evidence of that … He was arguing with the
> person, close enough to be heard, [when] he
> pulled out a gun and shot at him.

The district court further explained that the shootout led to
the near-fatal shooting of an innocent high school student.
Based on these findings, the district court applied the at-
tempted murder guideline as Turnipseed's most serious rack-
eteering activity.

The district court also found that Turnipseed was not a mi-
nor participant in the conspiracy. Specifically, the district
court stated:

> The other defendants who have pled guilty and
> been sentenced, Mr. Sims and DeAndre Spann,
> there is no evidence of them being involved in
> violence. If there is such evidence, it hasn't been
> brought to my attention. What they pled to are
> simple drug crimes, in essence. They pled to
> racketeering, but it [is] related to drug activity.
> And so I think the fact that a person is willing to
> kill to protect drug territory and [] is armed
> when he's selling drugs is someone who can't
> be characterized under the definitions set forth

in the guideline as someone who is a minor participant.

Based on the district court's findings, Turnipseed had a total offense level of 26, a criminal history category of I, and sentencing range of 63 to 78 months. The district court sentenced Turnipseed to 120 months' imprisonment, followed by three years' supervised release.

In imposing the sentence, the district court weighed the 18 U.S.C. § 3553(a) factors, specifically identifying aggravating and mitigating factors. Relevant here, the district court considered Turnipseed's social media posts an aggravating factor. The district court acknowledged that Turnipseed was an aspiring rap artist with a recording contract, and that some of his social media posts were promotional material for that career. But outside of photos and videos relating to his rap career, the district court found that several posts showed that Turnipseed was a felon in possession. The district court rejected Turnipseed's argument that the guns in those videos and photos were fake; the court reasoned that if they were, Turnipseed would not have committed obstruction in attempting to delete the photos and videos.

The district court also considered Turnipseed's history with gun violence an aggravating factor. The district court stated:

> You were shot at the age of 14. And you've seen a number of people shot. Your being shot is not your fault. But you ought to know having been shot yourself how dangerous it is to go shooting guns. And I find that an aggravating circumstance. You saw firsthand the carnage that

happens in your neighborhood when people
shoot up people, and you've participated in it.

The district court considered the severity of Turnipseed's con-
duct as an additional aggravating factor. Turnipseed joined
the gang when he was seventeen years old and remained in-
volved until his arrest in his early twenties. As part of the
gang, the district court found, Turnipseed was armed and
ready to kill to protect drug property. The district court also
noted that Turnipseed's actions resulted in the shooting of an
innocent student. The district court explained that "an inch
either way," T.S. would have died and Turnipseed would pos-
sibly be facing life in prison. The district court also considered
T.S.'s victim impact statement and that T.S. would live with
the trauma of the shooting for the rest of her life.

In mitigation, the district court noted that Turnipseed had
a rough childhood, grew up in a violent neighborhood, and
suffered significant childhood trauma. The district court
acknowledged that Turnipseed's brother was a victim of gang
violence, and Turnipseed had witnessed people shot to death.
The district court also considered an expert report submitted
on Turnipseed's behalf.

In the end, the district court found the advisory sentencing
guidelines too low. The district court explained that the
guidelines did not take into account many of Turnipseed's
crimes, such as committing obstruction or being a felon in
possession of a firearm on more than one occasion. In impos-
ing an above-guideline sentence, the district court made clear
that it would impose the same sentence regardless of whether
it applied the aggravated assault guideline or found Tur-
nipseed a minor participant. This appeal followed.

**II**

We review sentencing decisions in two steps. *United States v. Porraz*, 943 F.3d 1099, 1102 (7th Cir. 2019). First, we ensure that the district court did not commit any significant procedural error, such as improperly calculating the applicable guidelines range. *Id.* Second, if we find no procedural error, we examine the substantive reasonableness of the sentence under an abuse of discretion standard. *Id.*

Turnipseed raises three arguments related to his sentence. He says that the district court erred by: (1) applying the attempted murder guideline as the most serious underlying racketeering activity; (2) finding that he was not a minor participant in the conspiracy; and (3) imposing a substantively unreasonable sentence. We review each argument in turn.

**A. Attempted Murder Guideline**

Turnipseed first argues that the district court should have applied U.S.S.G. § 2A2.2 which governs aggravated assault, as opposed to U.S.S.G. § 2A2.1, which covers attempted murder. We review the district court's application of the sentencing guidelines for procedural error de novo and the district court's factual findings for clear error. *United States v. Cherry*, 855 F.3d 813, 815-16 (7th Cir. 2017).

The RICO guideline instructs courts to use the offense level applicable to one of the predicate offenses underlying the RICO charge if that offense level is greater than the base offense level of 12 specified by the RICO guideline. U.S.S.G. § 2E1.3. The parties agree that Turnipseed's shootout with a rival gang member was his most serious predicate offense, and that the appropriate guideline range should be based on that shootout, but they disagree about the guideline that

applies. Turnipseed contends that aggravated assault is the appropriate guideline. *See* U.S.S.G. § 2A2.2. The guideline defines aggravated assault as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. 1. It provides a base offense level of 14, with an increase in levels depending on whether a firearm was discharged or brandished and on the severity of injury to the victim.

The district court, however, agreed with the government that the attempted murder guideline was appropriate. *See* U.S.S.G. § 2A1. The attempted murder guideline provides a base offense level of 33 for first degree murder, or 27 for any other murder. For the definition of attempted murder, the guideline points to the federal murder statute, 18 U.S.C. § 1111. U.S.S.G. § 2A2.1 cmt. 1. The federal murder statute defines murder as "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a). The statute then goes on to explain that first-degree murder requires premeditation or killing during the commission of certain specified felonies, and that all "other murder is murder in the second degree." *Id.* Here, the attempted murder would be classified as second-degree murder, and requires a showing that Turnipseed acted with malice aforethought.

Malice aforethought means to act without regard to the life of another or to take someone's life deliberately and intentionally. *See United States v. Delaney*, 717 F.3d 553, 555 (7th Cir. 2013). To prove malice aforethought, the government must prove that Turnipseed harbored an intent to kill. *Id.*

Turnipseed argues that the facts do not support that he acted with malice aforethought, or that he otherwise acted with intent to kill. As Turnipseed sees it, the evidence shows that he acted with an attempt to frighten or possibly cause bodily injury with a weapon.[1] But there is no clear error in the district court's conclusion that the evidence shows otherwise. Turnipseed admitted that he got into an argument with a rival gang member to protect drug property and that, during the argument, he took out a handgun and began firing at the rival gang member. Forensics confirmed that multiple rounds of shots were fired. As a result of opening fire, an innocent student was shot four times, suffering "through and through" wounds in her right side and near her lower chest. As the district court noted, an inch either way, T.S. would have been dead. These facts are sufficient to support the district court's finding that Turnipseed acted with malice aforethought. *See, e.g.*, *United States v. Grant*, 15 F.4th 452, 458 (6th Cir. 2021) (finding intent for attempted murder where defendant aimed the gun in victim's direction and fired); *United States v. Tello*, 687 F.3d 785, 789 (7th Cir. 2012) (district court applied attempted murder guideline in view of defendant's acknowledgment that he had fired a gun at members of the rival gang); *see also Braxton v. United States*, 500 U.S. 344 (1991)

---

[1] Turnipseed directs our attention to several cases where a defendant intentionally assaulted someone with a weapon causing serious bodily injury and was sentenced under the aggravated assault guideline. *See, e.g.*, *United States v. Smith*, 910 F.2d 326 (6th Cir. 1990); *United States v. Woodlee*, 136 F.3d 1399 (10th Cir. 1998); *United States v. Hicks*, 4 F.3d 1358 (6th Cir. 1993); *United States v. Willis*, 925 F.2d 359 (10th Cir. 1991); *United States v. Phillips*, 239 F.3d 829 (7th Cir. 2001). These cases, however, are inapposite. Unlike here, those cases did not involve a district court finding that the defendant acted with the intent to kill.

("stipulation by [defendant] that he shot 'at a marshal,' without any qualification" may establish the necessary intent).

It is true that the evidence could support that Turnipseed committed aggravated assault; many judges might have chosen that route. But our governing standard is clear error, under which the district court need only adopt a *permissible* view of the evidence. *See United States v. Lard*, 327 F.3d 551, 554 (7th Cir. 2003). Based on both Turnipseed's admitted conduct and the record, the district court permissibly concluded that Turnipseed acted with the requisite intent to justify application of the attempted murder guideline. *See, e.g.*, *Grant*, 15 F.4th at 458 (defendant's competing view that the evidence shows only aggravated assault is not the only view, and therefore, insufficient to overcome the deferential clear error standard).

## B.  Minor Participant

Turnipseed next argues that he was entitled to a two-level decrease under the guidelines because he was a minor participant in the conspiracy. "A district court must make factual findings to determine whether a defendant should receive a minor-role reduction, and, therefore, we review the decision for clear error." *United States v. Guzman-Ramirez*, 949 F.3d 1034, 1037 (7th Cir. 2020). Under the clear error standard, we reverse only where, having reviewed the entire record, we are left with "a firm and definite conviction that a mistake has been made." *United States v. Hernandez*, 37 F.4th 1316, 1320 (7th Cir. 2022).

Section 3B1.2 provides for a two-level decrease for a defendant who is only a "minor participant" in a conspiracy, meaning one "who is less culpable than most other

participants, but whose role could not be described as mini-mal." *United States v. Jones*, 55 F. 3d 289, 293 (7th Cir. 1995). For the reduction to apply, a defendant must show by a pre-ponderance of the evidence that he was "substantially less culpable than the average participant." *United States v. Or-lando*, 819 F.3d 1016, 1025 (7th Cir. 2016) (quoting U.S.S.G. § 3B1.2 cmt. 3(A)). To determine whether the defendant has met his burden, courts compare the defendant's role to that of the average member of the conspiracy, and not the leaders. *United States v. Guzman-Ramirez*, 949 F.3d 1034, 1037 (7th Cir. 2020). Courts also consider a non-exhaustive list of factors such as: (i) defendant's role in the conspiracy, including the length of his involvement; (ii) knowledge of the conspiracy; (iii) partic-ipation in planning and decision-making; (iv) relationship with other participants; and (v) potential financial gain. *Id.*; U.S.S.G. § 3B1.2 cmt. 3(C) (determination is based on the to-tality of the circumstances). The application of § 3B1.2 is "fact specific [and] based on the district court's evaluation of [a de-fendant's] role in the context of the other participants in the scheme," *United States v. Sanchez*, 989 F.3d 523, 545 (7th Cir. 2021), and the sentencing court is in the best position to deter-mine the role that a defendant had in the criminal activity. *United States v. Sandoval-Velazco*, 736 F.3d 1104, 1107 (7th Cir. 2013).

Turnipseed contends that the district court made no effort to place his specific conduct within the context of the conspir-acy charged as a whole. It is true that pool size matters: Tur-nipseed's role may seem bigger or smaller depending on what slice of the Four Corners Hustlers universe one looks at. Judged against simple street dealers and other individuals lower on the totem pole than he, Turnipseed's role may seem major. Judged against higher-ups in a gang that could include

hundreds of people with grander roles than he, Turnipseed's role may seem minor. But the clear error standard means we must reverse only when we are left with "a firm and definite conviction that a mistake has been made." *Hernandez*, 37 F.4th at 1320. And Turnipseed had the burden of showing that he was "substantially less culpable than the average participant" in his conspiracy. U.S.S.G. § 3B1.2 cmt. 3(A).

Here, the district court's analysis, particularly absent a contrary showing by Turnipseed, does not lend itself to a firm conviction that a mistake was made. The district court found that Turnipseed played an important, not minor, role in the conspiracy. The district court surmised that the Four Corner Hustlers included leaders, shooters, murderers, and simple street dealers. The court then concluded that, "[h]aving a person armed and ready to kill to protect drug territory is the definition of a person essential to the operation of the gang." The court also compared Turnipseed's conduct to two codefendants who, unlike Turnipseed, were simple drug dealers with no evidence of violence. Based on this record, we see no clear error in the district court's finding that Turnipseed was not "substantially less culpable" than the average participant in the conspiracy. *See, e.g., United States v. Bey*, 748 F.3d 774, 779 (7th Cir. 2014) (no plausible claim for a minor-participant reduction in his guidelines range in part where the defendant is just as culpable or more culpable than others); *United States v. Zhaofa Wang*, 707 F.3d 911, 917 (7th Cir. 2013) (affirming district court's decision not to apply the minor participant reduction where defendant was fully involved in the conspiracy, over a significant period of time, and played an active and essential role, even if others were more culpable); *United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004) ("[W]here each person was an 'essential component' in the conspiracy, the fact

that other members of conspiracy were more involved does not entitle a defendant to a reduction in the offense level."). And, importantly, Turnipseed did not meet his burden of showing by a preponderance of the evidence that the contrary conclusion was the only conclusion.

## C. Uncharged Conduct and Sentence Reasonableness

Turnipseed's final argument is that the district court imposed an unreasonable sentence based on uncharged conduct. We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Bridgewater,* 950 F.3d 928, 935 (7th Cir. 2020), cert. denied, 141 S. Ct. 638 (2020). In reviewing sentences for substantive reasonableness, "[w]e do not ask what sentence we would impose; we ask whether the district judge imposed a sentence for logical reasons that are consistent with the 18 U.S.C. § 3553(a) factors." *United States v. Campbell*, 37 F.4th 1345, 1352 (7th Cir. 2022) (citations omitted).

There is no presumption that an above-guideline sentence is unreasonable. *United States v. Morgan*, 987 F.3d 627, 632 (7th Cir. 2021). When considering whether an above-guideline sentence is substantively reasonable, we "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance." *Gall v. United States,* 552 U.S. 38, 50 (2007). "As long as the sentencing judge gives adequate justification," the judge "may impose a sentence above the guidelines range if he believes the range is too lenient." *Morgan*, 987 F.3d at 632 (citation omitted).

When fashioning a sentence, a judge may consider relevant uncharged conduct. *United States v. Ballard*, 12 F.4th 734, 743 (7th Cir. 2021); U.S.S.G. § 1B1.4. The uncharged conduct,

however, must be proved by a preponderance of the evidence, and the government bears the burden. *United States v. Holton*, 873 F.3d 589, 591 (7th Cir. 2017).

Turnipseed argues that the district court abused its discretion by considering uncharged conduct. The uncharged conduct Turnipseed refers to is the district court's consideration of his social media posts as an aggravating factor. As the district court explained, the social media posts depicted Turnipseed as a felon in possession of a firearm. Turnipseed claims that as an aspiring artist, he regularly displayed what appeared to be drugs and guns. But the record reflects that the government worked closely with Turnipseed to identify photos and videos that were not connected to Turnipseed's role as an aspiring artist. Moreover, the district court did not need to rely on Turnipseed's social media posts to find that Turnipseed unlawfully possessed a firearm on more than one occasion. Turnipseed admitted to being armed while protecting drug territory and while engaged in a shootout with a rival gang member. In other words, Turnipseed's admitted conduct, not his uncharged conduct, squarely identified him as a felon in possession of a firearm. The district court's consideration of this was not an abuse of discretion or reversible error.[2]

---

[2] We are less persuaded by the district court's rationale that the guns depicted in the videos and photos must have been real because, if they were not, Turnipseed would not have attempted to obstruct justice by instructing individuals to delete his social media posts. A defendant could be just as concerned about the effect of images with fake guns, as opposed to real guns, on his prosecution and sentencing. Fake guns, after all, are designed to look real.

Turnipseed also argues that the district court abused its discretion when it considered his being shot at 14 years old as an aggravating factor. During its discussion of aggravating factors, the district court did consider this historical fact. If one were to ignore the three sentences in between, the district court's statement certainly sounds inartful:

> *You were shot at the age of 14.* And you've seen a number of people shot. Your being shot is not your fault. But you ought to know having been shot yourself how dangerous it is to go shooting guns. *And I find that an aggravating circumstance.*

(emphasis added). But the district court did not say it found Turnipseed's shooting at age 14 an aggravating circumstance. Rather, the district court said it found aggravating the fact that Turnipseed's experience with gun violence should have, but did not, deter him from perpetrating gun violence himself. We see no abuse of discretion in the district court's consideration of this fact, particularly where the district court (a) acknowledged that Turnipseed's having been shot at age 14 was not his fault, and (b) also considered Turnipseed's exposure to gun violence as a mitigating factor, including that he grew up in a violent neighborhood, saw people get shot, and lost a brother to gang violence.

The record before us demonstrates that the district court properly considered the § 3553(a) factors and adequately explained why, in its view, Turnipseed's record as a whole merited an above-guideline sentence. The district court explained the nature and circumstances of Turnipseed's offense and reviewed his history and characteristics. The district court highlighted that Turnipseed joined the gang at age seventeen and has been a member of the gang until his arrest; that

Turnipseed's conduct in the gang included selling heroin and being armed while protecting property; and that his shooting at a rival gang member to protect drug property injured an innocent student who will likely live with the effects of that trauma for the rest of her life.

The district court also explained its view that the sentence imposed must attempt general deterrence and specific deterrence; as for the latter, the court believed Turnipseed demonstrated that he does not follow the law. The district court considered several mitigating factors, including Turnipseed's childhood trauma. In the end, however, the district court found the guidelines too low because they did not take into account certain aggravating factors. The district court gave adequate justification for imposing an above-guideline sentence, and based on this record, we cannot conclude that the district court abused its discretion in imposing the 120-month sentence.

**III**

Accordingly, we AFFIRM the district court's judgment.